is United States v. Fazio No. 13-3111 Mrs. Burke and Goldstein and Mr. Irie. Whenever you're ready. May it please the court, Mr. Irie. Your honors, my name is Holman Burke. I'm here on behalf of the U.S. Department of Justice. I'm here to ask you to please give me a statement and a reserve two for a rebuttal. That's fine. That's fine. I'm going to just ask you at the outset, you've heard of Marv Throneberry, the former baseball player, used to be in a Miller Lite commercial and he would always say, I don't know why I'm in this commercial. In this case, you've got a person who got the best possible sentence for a criminal plea. I mean, as good as it gets. And if he were, if we were to rule in your favor, it's highly likely that, let's say he goes to trial, and if he loses, he's going to get a much bigger sentence. And still be subject to being removed. I mean, so it seems like even if you were to win, any victory would be pyrrhic at best. I don't necessarily disagree, your honor. Mr. Fazio realizes that if he does get the opportunity, he starts at square one again, it's not likely that the government will offer the safety valve. It's not likely that the government will even offer a plea, unless he pleads generally. And you're absolutely right, your honor. Then he goes back to a trial, and federal court is difficult to defeat that, and he could wind up looking at a mandatory minimum sentence. What is the mandatory minimum here? I think it's five years, I believe. Ten. It's ten years, your honor. I guess because it's a five kilo conspiracy, so I think it's ten life. So he would be looking at the mandatory. He understands that, your honor, and the only explanation I can offer for someone in his position is perhaps for him, the deportation issue overrides anything else with regard to what can happen to him and his freedom. He has family. He wants to roll the dice, because he knew there were deportation consequences at the time he entered his guilty plea, but he didn't know the certainty of deportation, I take it. I think that's exactly right, your honor. He is indicating that he did not understand the length and breadth of the situation, and he was acting on advice of counsel, if you will, and he's indicating that that advice was not good advice at all. Perhaps I'm jumping ahead, but in this case, we've got a very, very detailed plea colloquy, and I'm thinking of our Shedrick case. Why doesn't that cure any error of counsel? It's our position, your honor, that the Rule 11 colloquy does not cure any ineffectiveness of counsel for a number of reasons. I think there's a practical aspect to this. When someone comes to an attorney and pays that attorney and says, I'm putting my faith in you as my lawyer to represent me, when we stand before the court and the judge is talking to me about what can happen and what can't happen, I turn to my lawyer if I have any issues, and my lawyer says to me, no, you're fine. You're fine. It's all OK. Just answer yes to the question. So that's part of it. The other part, I think, your honor, is when you're talking about the difficulty, Mr. Fazio has indicated a language barrier that was not, I think could have easily been overcome with an interpreter. We're talking about Italian as opposed to some dialect spoken by a small community in Africa or something like that. So we're talking about a much larger span. Sorry, are you saying that he didn't understand what was going on at the plea colloquy? He's indicating to us that, and I can only say it this way, I think, that in this country, who among us doesn't have someone in our family who's come here from another country who's been here for 35, 40 years and can converse with you about what they want to spend at the grocery store but doesn't necessarily understand what a district court is telling them? So in those moments of doubt, you turn to your attorney to explain the situation, and what Mr. Fazio has indicated to us is that that explanation wasn't appropriate. Not only that, your honor, but I think the main thing that we're talking about with the Rule 11 colloquy is it is not sufficient because it does not talk in terms of, I think, a more certainty about the outcome. Well, it says you know you could be deported. Even if the consequence is your automatic removal from the United States. It says that, and he turns to his attorney, and as his attorney, I think, testified at a previous hearing, he did not think that that was going to happen to Mr. Fazio, and that was completely incorrect. He thought that the number of years that Mr. Fazio had spent in this country was going to, for some reason, override the fact that this was a conviction for an aggravated felony. He was completely wrong about that. Now, our client, Mr. Lancaster's client at the time, was relying on that advice he had received before they got to court, and at a time when they're sitting in the office. Let's assume for the moment that, right, there was misadvice. There was no speaking to an immigration expert at that point in time. But you get, you have a plea agreement which says that regardless of any immigration consequences that his plea may entail, even if the consequences are automatic removal, and then Judge McVeary at the sentencing, now knowing this, do you nevertheless want to plead guilty regardless of any immigration consequences that your plea of guilty may entail, even if the consequence is your automatic removal from the United States? That puts this case really very different than what you saw in Padilla and Orazio. Your Honor, I understand that line of thought because I think... What else could the court have done here? What else could the court have done to preclude prejudice? That's exactly what I'm thinking, is we're talking in this plain language as the court can muster when they're speaking with a defendant. And we're saying, you know, we've got to draw a line. There's got to be a moment where you say, how much more plain can it be? There is a shock factor involved with individuals who come to a federal courthouse that is hard to explain. But I see it when people want to withdraw guilty pleas, both on the state court level and in federal court. There is, as plain a language as you can make it. Again, there is still a huge amount of faith you put in your lawyer. You've gone to see this lawyer. You've developed some type of relationship. And you've met with this lawyer before you get to court. And this lawyer has pretty much said to you, this isn't going to happen. You're not going to get deported. And so when the court says to the client, to the defendant, this could happen to you, looks at his lawyer, and his lawyer is saying, no, this is not going to happen to you. And he's putting the faith in this lawyer who he's developed this relationship with, who he's paid to represent him, rather than with the court. Should that be the case necessarily? Maybe not. But I think it's, practically speaking, that's what happens to people. So I assume that's the same response you have to the plea agreement itself, which says it could have consequences, including deportation. Because our argument ends up being, because there's not a finality to the language, even between the plea agreement or the rule of incolloquy. But what else could a court do to either cure or preclude prejudice? I think in this situation, the language could have been much more direct. It's hard to be more direct than that. Even if. Even if. You can imagine, sort of like, remember as a kid in school, do you understand what you're doing? Do you know what the consequences are? It could be blank. And you go, well, I'm still doing it. Right. And perhaps we are talking about native-speaking people when we're talking about that. But I think there is a language issue, there's a language barrier when you're talking about this situation. This was so important. Why didn't Mr. Fazio testify at the evidentiary hearing regarding the withdrawal of his guilty plea? Probably on the advice of counsel, Your Honor. He's not going to allow his client to take the stand on a situation like that. And I don't know why he should. But if you want to prevail, you want to withdraw your plea. Right. Don't you have to get on? I mean, rather than have your wife testify? It would have been my advice to put the client directly on to communicate with the court. But that wasn't the advice given in this situation. And, again, that's more ineffectiveness that we believe happened. It's just more bad advice all along the way. I don't know the facts. But why don't we hear from Mr. Goldstein, then we'll get you back on the phone. Thank you, Your Honor. Did he just argue your issue? Sort of did, yes, Your Honor. Sorry about that. That's fine, Your Honor. May it please the Court, Mr. Henry. I'd like to, if I could, respond to your very pointed question about what more could the court have done. We've clearly established that there was prejudice in this case because there was ineffective assistance. Well, you established that the counsel performed below a standard, and there would be prejudice unless the prejudice was either precluded or cured by the plea agreement and or the colloquy. Right, so exactly, Your Honor. So to the point of the cure by the colloquy, if the court had said you've got a risk of deportation and do you wish to plea, even if the consequences were automatic deportation, that might be sufficient under the Rule 11 amendments. But what the court did in addition to that was say, incorrectly and contrary to the law, that no one, including your attorney or me or the government's attorney, can predict to a certainty the effect of your conviction on your immigration status. That is incorrect. But in effect, that's pretty much true. I'm sorry, I beg to differ, Your Honor, because the court in Padilla set out two different standards. One standard was for situations when the immigration consequences were unclear. But it also could be the case, for example, what if the government decided not to press forward with regard to removal? So no one could predict that, you know, you've talked with the government. We've had cases where that's happened, and in fact they've been mediated where someone from government has decided, you know what, because of the particular extenuating circumstances here, we're not going to go forward. Yes, Your Honor, but that doesn't change the fact that the Supreme Court said in Padilla, and the same thing happened in Horacio in the Third Circuit, that if you've been convicted of a controlled substance offense, that you could term it as near certainty in Horacio, that's how the court termed it, or in Padilla, presumptive mandatory deportation. The circumstances were clear. The statute's clear. All you had to do was read the statute. What were the facts in Horacio? See, I thought that the court was silent, or there was silence on the ---- The court in Horacio said, excuse me, Your Honor. It was an opinion written by Judge Pollack. Were you on the panel? Yeah. The Horacio plea colloquy was insufficient to mitigate prejudice suffered by Mr. Horacio. As the Padilla court, and this is a quote from this case, as the Padilla court noted, because the law was succinct and straightforward and truly clear with respect to removal of controlled substances offenses, the colloquy did not alert Mr. Horacio to the fact that his removal was a near certainty as a consequence of pleading guilty to a controlled substances offense. But the colloquy here said, you understand that even if it's automatic removal, not near certainty, even if it's a certainty, you're going to be removed. Yes, and I wanted to respond to that. This is a very different fact pack. Do you know of any case where courts have found prejudice under Padilla in a similar context where a petitioner did not testify or provide an affidavit that he would have gone to trial but for an attorney's failure to warn him of the immigration consequences? I'm not aware of a case like that, Your Honor. But what I would say about the fact that the court said that are you willing to plead even if it results in automatic removal, that's a statement that Mr. Fazio said that he would because he worked that out with his attorney. But when he is told that nobody can tell him what the immigration consequences will be, when Padilla and Horacio and Akinseid all say that it's mandatory deportation or a certainty, then that's actually misleading. And in that instance, he's not making a knowing plea. And that's what Rule 11 is about is to make a knowing plea. You know, put yourself in the position of the district court here, district judge. You don't necessarily want to say that something is, you know, 100 percent certain. But what if the judge said, look, I can't tell you for certain exactly what's going to happen. I can't tell you if the sun's going to come up tomorrow necessarily. But it's as close to a certainty. It seems pretty certain that there will be an automatic removal. That would be appropriate. If you plead guilty to this aggravated offender. That would have been appropriate, but the court didn't do that in this instance. But the court didn't. The court didn't. He didn't skirt around it by much. He said even if the consequence is automatic removal. Yes. I don't know. I just don't know. We haven't found, and I guess you haven't found either, any case that says that there's prejudice on this set of facts. So Mr. Fazio agreed that he would be subject to removal, and he would agree to the plea, even if it possibly was automatic removal. But his calculation of the chances of whether he was going to be subject to automatic removal had a lot to do with the court saying nobody can tell you how certain this is. And that was actually not true. Because the court in Padilla, the court in Horatio, the court in Atkins said, all these cases said this is near certain, presumptively mandatory. So the cure is supposed to take care of the deficiency of the defense counsel for the constitutionally deficient advice. And it's not a cure if it's inaccurate. But, again, now knowing this, you nevertheless want to plead guilty regardless, I mean, no matter what happens, including automatic removal. Right. So Mr. Fazio is saying that if I'm removed, I agree to it. But that doesn't go to the issue of the chances of his removal. And the court misled him in its statement that no one can tell you with any certainty. Counsel may have misled him. Counsel admitted he misled him. I don't think the court necessarily misled anybody. Right. Not intentionally, Your Honor. But by saying that nobody could tell you, that nobody could give you advice to this issue, when the Supreme Court has said that this is something that's clear, that's a misdirection. It doesn't certainly cure the deficiency of defense counsel. All right. We'll only hear from Mr. Ivory, and then we'll get Mr. Burke back on the rebuttal. Thank you. Thank you. May it please the Court, Counsel. My name is Michael Ivory. I'm an assistant U.S. attorney from Pittsburgh. Good morning, Your Honors. Let me ask you this. If Mr. Fazio did not attempt to withdraw his guilty plea because of the risk of removal, why did he? I'm sorry, Your Honor. I mean, he attempted to withdraw his guilty plea before sentencing. That's correct. I mean, usually you have the problem where somebody goes to sentencing and they get a far greater sentence than they had hoped for, and then they attempt to withdraw. Here's somebody who attempts to withdraw before he got sentenced, and despite the fact that the sentence here was remarkably lenient. That's correct. And great from his perspective. Despite that, he still wishes to withdraw and, in effect, quote, roll the dice, close quote. That's correct. That's what he wants to do. I don't know why he would want to do that. It certainly does not make sense. Judge McVeary at the sentencing hearing addressed that specific issue and said that, Mr., this was a 16 defending case. Everybody was convicted. The two or three defendants who went to trial were convicted. The remaining defendants all pleaded guilty, and Judge McVeary made an assessment of the case after presiding over all the co-defendants' cases, saying, you don't stand a pretty good, first of all, you should not have moved to withdraw your guilty plea that was misadvised. Secondly, you would not have stood a good chance if you had proceeded to trial, Mr. Fazio. So clearly Judge McVeary was aware of that, and I don't know what's going through Mr. Fazio's mind. Maybe he doesn't like the hard place, so he's trying out the rock. I believe that the government, in one of its pleadings, in response to the motion to withdraw a guilty plea, indicated that that's what Mr. Fazio was doing. But as for his motivations or his reasons for so doing, I don't know. But I would like to address the issue of the language barrier. Judge McVeary had the opportunity to observe Mr. Fazio on a number of occasions in court and specifically found that at no point during proceedings did Mr. Fazio appear to be confused or lack comprehension. When Mr. Fazio came in for his debriefing with the government, pursuant to the terms of his plea agreement, he was not accompanied by an interpreter. No interpreter was present at the sentencing hearing as well. So there's simply no support in the record indicating that Mr. Fazio has some kind of inability to understand linguistically what was going on. I believe that even if Mr. Lancat and one other additional point, the question was posed as to why Mr. Fazio did not testify at the motion to withdraw a guilty plea. I pointed it out in my briefing that this court should take that into account. I was surprised when I saw that he did not testify. I was not the trial assistant. I was not the prosecutor, but I have prosecuted a number of cases and I've litigated motions to withdraw a guilty plea post-plea pre-sentence and seven or eight times and every time a defendant testified. I was curious as to why Mr. Fazio did not testify. I believe the reason why he did not is because he would have to explain away why he was essentially lying to Judge McVeary at the change of plea colloquy when he said, I understand what's going on. I'm willing to plead guilty even if it means my automatic deportation from the United States. Although there's usually an easy response to that. I'm not familiar with the court system. I do what my attorney tells me to do. If he tells me to shake my head yes, I shake my head yes. Then Mr. Fazio would have to explain why he was able to comprehend Mr. Lancaster's overly optimistic assessment but could not understand Judge McVeary's pessimistic admonishments. So that is why I believe Mr. Fazio did not testify. You know, just out of curiosity, by now I think we're all aware that certain drug offenses are going to mean for someone who's not a citizen, it's going to mean removal. You guys must know this now. How are you responding? Is this the plea agreement you use or are you being more specific now? This was the plea agreement that was in effect. The language is drafted in the wake of the Padilla opinion. Right. Now there's more certainty now, I think, right? I understand there's always a possibility the Attorney General decides not to remove a person or whatever, but at least presumptively the person is going. And the courts have used the word presumptive, you know, almost mandatory, but they've never come out and said this is a certainty. You know, it's a fait accompli. The courts have never said that. And when you're pleading, it doesn't say that either. This version does not, no. That is correct, but we can't guarantee. What happens if you have a situation? I'm not saying you're saying you're definitely going, but is it perhaps you'd give defendants, you know, in the future notice that, hey, you're in trouble, you should know this. Well, what would happen if, hypothetically speaking, the plea agreement had said, Mr. Fazio, you will be deported, or if he had the certainty that he now requires, I'm going to get deported, and he decides to roll the dice. And then he goes to trial, he's convicted, and then maybe while he's in jail, there's a change in procedure and policy. Now he's already served six years based upon counsel's certain advice, as opposed to being, I don't want to say indefinite. I mean, because he admitted that he had been, he admitted in several pleadings that he had been informed of the possibility of removal in this case. Now, granted, Mr. Lancaster's advice was optimistic in that he said, you stand a chance of not being deported, but then we have to look at what the district court did in this case. Now, when the district court did the Rule 11 colloquy in this matter, it was under no obligation to advise a defendant of removal proceedings. In 2013, the rules of criminal procedure were amended in light of the Padilla decision, and now according to the bench book, this is what the district courts are required to tell a defendant. Do you understand that if you are not a citizen of the United States, in addition to other possible penalties you are facing, a plea of guilty may subject you to deportation, exclusion, or voluntary departure, and prevent you from obtaining U.S. citizenship. It's a generic, nonspecific, uncertain admonishment, warning. Contrast that with what Judge McVeary said. Clearly the judgment above and beyond what was required of him, it wasn't even required to tell Mr. Fazio. This was in 2009? 2010. 2010. 2010. That he was going to get deported. But instead, he does come forward with this statement saying, do you still wish to plead guilty even if it means your automatic removal from the United States? Now, one of the cases that the defendant relies upon is Akinzade, a case I believe out of the Second Circuit. The admonishment in that case was, quote, or if you're not a citizen, you could be deported. That's it. I mean, clearly it's paltry in connection. It's paltry compared to what Judge McVeary said in this case. Does Shedrick, does that take you all the way in this case? Is that what we need to rely on? I believe so. I believe so because to the extent that this, Attorney Lancaster's advice could be construed as an incorrect sentencing prediction. Clearly, Shedrick, I'm sorry, states that you have to look at what the district court did to remedy that. And clearly, I think that the Rule 11 colloquy in this case certainly does remedy any prejudice that Mr. Fazio could have been facing. There is one point I would like to note. One of the issues involved in this case deals with the collateral rights waiver. There were some news articles over the weekend indicating that the Department of Justice may be changing its policy on that. I have not received official word on that, but if it does, I will advise this court if there is a policy change concerning whether or not the government will. Would that affect this case then? I don't know. Okay. I don't know. What is the gist of what the policy change might be, at least as it was reported, without putting you on the hook here? It says that the Department may no longer seek them. I know in the Western District you no longer seek collateral rights waivers. I don't think that they do that in the Middle District or here in the Eastern District. I can't speak for those districts as well, but if there is a policy change, I will notify the court. And if the court wants additional briefing, I'd be more than happy to provide the court with whatever guidance I can. Is there any time frame on that? No. Perhaps this case should be CAV'd, no? That might be inappropriate. That may happen. Again, I have to check with Washington, with Maine Justice. As of this morning, at least 835, the last time I checked my e-mails, there was nothing. There was no word. But if there is a change of policy, I will notify the court. I'm sorry. But in this case, the plea agreement isn't so much what you're relying on as it is the plea colloquy. It's the plea colloquy, Your Honor. Although the plea agreement does contain language upon which Judge McVeary's admonishments were based. So it does track that language. And again, we drafted that. That language was drafted in response to Padilla. Well, we have not yet enforced the waiver of collateral rights. No. Judge McVeary found. And I can understand Judge McVeary's point of view because the direct appeal was dismissed based upon the appeal waiver. That's correct. And Judge McVeary never addressed the merits of the 2255 motion. So to the extent that Mr. Blasio is asking that this court grant his motion for 2255 relief, I don't believe it can in light of Judge McVeary's determination that he did not reach the merits of the motion based upon the earlier proceedings in the case. Thank you very much, Your Honors. Thank you. Thank you. Your Honors. I was thinking about the questions that the court had posed regarding why didn't Mr. Fazio testify. And we believe, after speaking with Mr. Fazio in preparation with this situation, he has a real concern about how he communicates in English. And one of the issues that he was having was his ability to confidently represent what he's thinking. But here you could also have an interpreter as you're hearing too. If there really is a problem with regard to understanding the language, and Mr. Ivery points out is he's not saying he had a problem understanding his own attorney. He's saying he had a problem understanding a very direct and simply worded plea colloquy. So he might have to explain that. But let's assume he has problems with English. He could easily have an interpreter. And we understand that he requested one from his attorney but didn't get one. And he had wanted one. And I think that he asked his wife to come and speak. But he still could have done an affidavit. That doesn't require. I mean, usually, quite often the affidavit is going to be prepared by the attorney anyway. And I don't even know that that was suggested to him by his attorney. But, again, that would go back to an effectiveness of his counsel. But is this language issue anywhere in the record? I don't see it. I don't know that I can point to the record at the moment for it, Your Honor. But I'm saying that that's the court has posed the question as to why he didn't testify. And the only explanation that I can offer is between the advice of counsel and his belief that he did not have confidence in his own ability to communicate. That may be the case. But the point is that is not in the record. That may be so, Your Honor. I mean, the thing to have done would have been at the evidentiary hearing to say he's not going to testify. He's going to have his wife here. The attorney is going to testify. The reason he's not going to testify is because he doesn't understand the language and is concerned that he would misapprehend questions that would be asked of him. I was not counsel at that time. But I don't disagree with that, Your Honor. I think that would have been a more appropriate approach in terms of explaining everything to the court as to how he felt. The other thing is we can only address the conversation that he had with the court, but I don't know that we can actually address the conversation he had with his attorney. Perhaps at the time they weren't going to do that because of the attorney-client privilege situation. So to some extent they could, but to a greater extent they couldn't address that in open court. Thank you very much. Thank you, Your Honor. All counsel for a well-presented argument will take the matter under advisory.